# United States Court of Appeals
## For the First Circuit

No. 10-1953

GENARO BONEFONT-IGARAVIDEZ,

Plaintiff, Appellant,

v.

INTERNATIONAL SHIPPING CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Ripple,[*] and Selya,
Circuit Judges.

Elaine Rodriguez-Frank for appellant.
Antonio Cuevas Delgado, with whom Cuevas Kuinlam & Bermúdez
was on brief, for appellee.

October 14, 2011

[*]Of the Seventh Circuit, sitting by designation.

**HOWARD**, <u>Circuit Judge</u>.  In this age discrimination case, plaintiff-appellant Genaro Bonefont-Igaravidez ("Bonefont") challenges the entry of summary judgment in favor of his former employer, defendant-appellee International Shipping Corporation ("Intership").  Ascertaining no reversible error, we affirm.

## I. Background

The critical facts are straightforward.  Intership loads and unloads cargo ships in Puerto Rico.  The bulk of its work force is comprised of stevedores, who are assembled into fixed groups referred to as "gangs."  Each gang is supervised directly by a foreman, who in turn reports to a "Bozo" (also called a "Bosso" or "Bosson").  Bonefont worked for Intership for fifty-seven years, primarily as a stevedore.

Between late 2006 and early 2007, Bonefont missed several months of work due to various physical ailments, during which time he received disability benefits.  Upon his return to active employment in April 2007, some of Bonefont's stevedore colleagues allegedly leveled insults related to his age and medical conditions, often in the presence of supervisors.  Specifically, they called Bonefont an old, sick man; asked him why he had not retired; told him that he was too old to perform his job duties; and urged him to stay home to watch soap operas and care for his

grandchildren.  Bonefont does not allege that any of his Intership superiors initiated or actively participated in this behavior.[1]

On April 23, 2007, Intership Director of Human Resources Karen Figueroa was informed that Bonefont had purportedly assaulted his Bozo, Raúl Pérez Valentín ("Pérez"), during his shift earlier in the day.  Pérez himself was more than sixty years old.  Figueroa immediately suspended Bonefont, and shortly thereafter decided to terminate his employment, effective as of the day of the incident. A report filed by Intership Security Officer Luis Burgos stated, in part:

> Mr. Genaro started to argue with the Bozo where the argument became very heated and they became angry.  Mr. Genaro raised his hands trying to assault the Bozo [b]ut he was unable to because the Bozo raised his hands to cover his face and he only hit him in the hands.

Bonefont was informed of his termination on May 11, 2007.  At that time, he was seventy-one years old.

Bonefont sued, asserting that Intership had discriminated against him because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634.  He

---

[1]Bonefont's brief does make glancing reference to discriminatory comments made by Jose Dávila, a company supervisor, and Raúl Pérez Valentín, a Bozo.  These perfunctory claims, however, lack support in the record.  In deposition testimony, Bonefont conceded that he "[does not] know if Mr. Dávila participated" in the age-related banter, and that Pérez "has not made any comments to me about my age."  Further, with respect to Dávila, Bonefont subsequently clarified in his brief that the supervisor may have only been "aware of the [age-related] comments made to Plaintiff" (emphasis added).

claimed that he was terminated because his seniority entitled him to higher pay than other stevedores and because Figueroa and others believed him too old to do his job. Intership denied the allegations of the complaint and, at the conclusion of discovery, moved for summary judgment. The district court, adopting in large part the report and recommendation of a magistrate judge, granted the motion over Bonefont's objection, concluding that there was no probative evidence of discriminatory animus. Bonefont-Igaravidez v. Int'l Shipping Corp., Civ. No. 08-2307 (D.P.R. July 6, 2010). This timely appeal ensued.

## II. Legal Analysis

### A. Standards

We review a district court's entry of summary judgment de novo, taking the facts of record in the light most favorable to the nonmoving party (here, the appellant Bonefont), and drawing all reasonable inferences in his favor. Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).

The object of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)). Thus, summary judgment is appropriate only when the moving party "shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We are not, however, required to "accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory, or imaginative statement" made by a party.  Torrech-Hernández v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008).

### B. ADEA Claim

The ADEA makes it unlawful for any employer to "discharge any individual or otherwise discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  Generally, in order to make a claim that his termination was violative of the ADEA, an employee shoulders the burden of proving that his age was the determinative factor in his discharge.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991).  Where, as here, the employee lacks direct evidence, we utilize the burden-shifting framework developed by the Supreme Court to facilitate the process of proving discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); see also Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 218-21 (1st Cir. 2008) (applying the burden-shifting framework in an ADEA case); Dávila v. Corporación de P.R. para la Difusión Pública, 498 F.3d 9, 15-18 (1st Cir. 2007)(same).

Under this framework, the terminated employee bears the initial burden of establishing a prima facie case of age

-5-

discrimination. To satisfy this burden, he must produce evidence showing that: (1) he was at least 40 years old at the time of the termination; (2) he was qualified for the position that he had held; (3) he was fired; and (4) his employer subsequently demonstrated a continuing need for those services. Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 (1st Cir. 2009). This showing is sufficient to raise an inference of discrimination, thereby shifting the burden to the employer to articulate a legitimate, non-discriminatory reason for the termination. Currier v. United Techs. Corp., 393 F.3d 246, 254 (1st Cir. 2004). The employer's burden is one of production, not persuasion. Dávila, 498 F.3d at 16. Accordingly, "the employer need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive." Id. If the employer does so, the burden reverts to the employee to show, by a preponderance of the evidence, that the employer's proffered reason for the adverse employment action "is pretextual and that the true reason for the adverse action is discriminatory." Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir. 2010).

In this instance, Intership concedes that Bonefont has established a prima facie case of age discrimination, and there is no doubt that Intership's explanation for the discharge - Bonefont's alleged assault of Pérez - is facially adequate. Thus, we turn to the pivotal question: whether Bonefont has adduced

sufficient evidence that Intership's articulated basis for his termination was pretextual. We hold that he has not.

Under the purview of the ADEA, pretext can be established by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's offered reasons for the termination that a "reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662-63 (1st Cir. 2010) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). To support his claim of pretext, Bonefont first presents several purported inconsistencies in Intership's account of events. Specifically, he argues that there are at least two versions of the incident report; that it was Intership supervisor Jose Dávila, and not Figueroa, who suspended him on April 23, 2007; and that the final decision to terminate occurred not on April 23, 2007, but later, after Intership's internal investigation had concluded.

Even assuming, arguendo, that the inconsistencies identified by Bonefont find support in the record, they are still insufficient to demonstrate pretext absent some cognizable nexus to Intership's offered basis for termination.[2] To impugn the veracity

---

[2]Record evidence of these facts is scarce. In support of his claim that Dávila, and not Figueroa, ordered the suspension, Bonefont provides an email from Luis Burgos to Karen Figueroa dated

of a tangential aspect of Intership's story is not enough.  Rather, Bonefont must elucidate specific facts to support the proposition that Intership's reason for termination is "not only a sham, but a sham intended to cover up [its] real . . . motive of discrimination."  Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006) (quoting Mesnick, 950 F.2d at 824 (internal quotation mark omitted)).  The only discernible distinction between the two copies of the incident report is the appearance of Pérez's signature on one but not the other.  The substance of the reports is otherwise identical.  This fact does nothing to unveil any ulterior, discriminatory motive.  Similarly, on these facts, neither the identity of the specific employee responsible for suspending Bonefont nor the date of the decision to terminate are related to the company's motive for discharge.  Bonefont's assertion that these alleged inconsistencies support a finding of an underlying nefarious intent on the part of Intership is therefore not reasonable.  Id.; see Torrech, 519 F.3d at 47 (a court is required to draw only reasonable inferences in plaintiff's favor).

---

April 24, 2007, which notes only that Bonefont was the employee suspended the previous day.  The email does not identify anyone specific as being responsible for ordering the suspension. Further, not only is the record silent as to the specific date of the termination decision, but it is also difficult to understand how being fired after the investigation supports a claim of discriminatory animus.

In addition to challenging Intership's version of events, Bonefont also argues that Intership's past improper treatment of older employees constitutes evidence of pretext. He grounds this argument in two separate allegations: that he was personally mistreated by Intership employees due to his age; and that Intership, in previously exercising its discretion not to terminate younger employees for similar acts of physical aggression, had established a pattern of disparate treatment. We address each of these allegations in turn.

Regarding his claim of personal mistreatment, Bonefont points to the disparaging remarks made by his co-workers, including that he was too old and sick to perform his job, and that he should retire to watch soap operas and care for his grandchildren. Although such remarks may be material to the pretext inquiry, their probativeness is "circumscribed if they were made in a situation temporally remote from the date of the employment decision in question, or if they were not related to the employment decision or were made by nondecisionmakers." McMillan v. Mass. Soc'y for Prev. of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir. 1998)(internal citations omitted). Here, the stray remarks to which Bonefont alludes are not significantly probative of pretext. While perhaps not temporally remote from the date of the employment decision, the comments were made by his fellow stevedores in circumstances unrelated to the altercation and subsequent termination. Bonefont

presents no evidence that Intership's decisionmakers made, or were even aware of, such comments at the time the decision to terminate was rendered.[3] Nor is there evidence that Figueroa, in making her decision, relied on information from any Intership employee who may have demonstrably possessed a discriminatory animus. See Dávila, 498 F.3d at 17 n.3. Thus, without more, the comments are insufficient to establish pretext. See Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002).

To support his allegation that Intership failed to terminate several younger employees for similar acts of aggression, Bonefont relies on the sworn statement of Julian Cepero Vega ("Cepero"), the stevedores' union president. Cepero, who was neither employed by Intership nor privy to Intership's internal disciplinary proceedings, claims that between 2005 and Bonefont's 2007 termination, at least five younger employees "were involved in fist fights and were not terminated or sanctioned by Intership."

---

[3]In a sworn declaration, Karen Figueroa avers that she "had no knowledge of any comments in the waterfront regarding Mr. Bonefont's age." Bonefont also testified accordingly:

Q: Before April 22, 2007, had Mrs. Karen Figueroa made any comments about your age?

A: She and I have never talked.

Q: Do you have any reason to believe that Mrs. Karen Figueroa knew about the comments going on in the waterfront about your age?

A: I don't know. I can't answer that for you, because I don't think so.

For such disparate treatment to be probative of a discriminatory motive, however, it must be shown that the incidents were "similarly situated in material respects [to the proposed analogue]," Vélez, 585 F.3d at 451. Bonefont makes no such showing. There is simply no indication, either in Cepero's statement or elsewhere in the record, that these other purported incidents were materially similar to the one involving Bonefont.[4] Such unsupported conclusions are exactly the sort to which we accord minimal probative value, and they thus fail to show that the real reason for Bonefont's termination was age discrimination. Id.; Torrech, 519 F.3d at 47.

Finally, we address an argument to which Bonefont devotes substantial, but ultimately misplaced, attention: that his altercation with Pérez never escalated to the level of physicality ascribed to it by Intership. To that end, he introduces statements from the putative victim Pérez and fellow Intership employee Tomás Otero, procured well after Bonefont's termination, which indicate that Bonefont never attempted to strike Pérez. Even if, unlike the district court, we considered these statements,[5] the argument

_____

[4]In fact, the record suggests that Ms. Figueroa historically terminated any employee whom she learned had engaged in similar aggressive behavior.

[5]The district court granted Intership's motion to strike the statements, finding them to be neither valid depositions pursuant to Federal Rules of Civil Procedure 28(a)(1), 28(c), and 30(b)(5), nor adequately sworn affidavits under Rule 56(e). Bonefont argues that the district court abused its discretion in doing so. While

-11-

misses the mark. When assessing a claim of pretext in an employment discrimination case, the court must focus on the motivations and perceptions of the employer's decisionmaker. Mesnick, 950 F.2d at 824. Whether these perceptions are accurate or not, and the motivations apt or inept, so long as they are not discriminatory it is beyond the province of the court to act as a "super personnel department[]," second-guessing the process by which the decisionmaker has arrived at her conclusion and, in effect, substituting its own business judgment for that of the employer. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007).

Thus, even if Bonefont is correct and the punch was never thrown, this fact may indicate nothing more than that his dismissal was unfair or unwise. Figueroa has stated, under oath, that she fired Bonefont based on her belief that he attempted to strike Pérez, and Bonefont identifies nothing in the record to impugn that stated reason. It is not our job to review the accuracy or acumen of Figueroa's position, so long as it is not grounded in discriminatory animus. Id.; see also Rivera-Aponte v. Rest. Metropol # 3, Inc., 338 F.3d 9, 11-12 (1st Cir. 2003) ("Whether a termination decision was wise or done in haste is irrelevant, so long as the decision was not made with discriminatory animus.").

the district court's analysis appears sound, even if erroneously excluded the statements would not change the result.

-12-

There is certainly something to be said for an employer-employee relationship that spans the better part of six decades. Such lengthy tenures are increasingly rare, and for this one to have dissolved under such circumstances is no doubt regrettable. But the action taken was not in violation of the statute. Because we agree with the district court that there is nothing in the summary judgment record from which a reasonable factfinder might conclude that Bonefont was fired as a result of his age, the judgment is **affirmed.**