NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-184

JULIE C. LOCKLEAR

vs.

ARGENX US, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Julie C. Locklear, filed a complaint against the defendant, her former employer argenx US, Inc., asserting employment discrimination on the basis of disability or being regarded as a person with a disability.  A judge of the Superior Court granted argenx summary judgment, concluding Locklear failed to "demonstrate or introduce questions of fact by way of direct or circumstantial evidence" that argenx's nondiscriminatory reasons for terminating Locklear were pretextual (emphasis omitted).  We affirm.

Background.  We summarize the material facts in the light most favorable to Locklear with additional facts reserved for later discussion.  In September 2019, argenx, a pharmaceutical

company based in Belgium and with an office in Boston, hired Locklear as head of health economics and outcomes research. While Locklear was based in argenx's Boston office, her supervisor, Trevor Leighton, was based in Belgium. Leighton and Locklear's working relationship began on a positive note. For instance, argenx's chief operating officer (COO), Robert Keith Woods, reported that Leighton was Locklear's "biggest fan in the company" on her hire. Leighton was complimentary and "impressed" by Locklear's work product during the first few months after her hire.

In early January of 2020, Locklear informed Leighton that she suffered from hypersomnia.[1] Locklear did not state either that she had a disability or that the condition would impact her work performance. In response, Leighton told Locklear that she "cannot use [her] disability as an excuse not to deliver" and "[she has] to come up with strategies to overcome it." In mid-January, Leighton met with argenx's head of human resources, Sara Mannle, to discuss how to improve his working relationship with Locklear. At this meeting, Leighton expressed concerns about Locklear's understanding of his expectations and the quality of her work. On January 20, Leighton communicated this displeasure to Locklear by telling her that slides she had

---

[1] Hypersomnia is a condition characterized by excessive daytime sleepiness.

created were "far from what [they] discussed and [he] envisaged."

On February 6, Locklear described her hypersomnia to Leighton as a "disability." Leighton notified Mannle. On the same day, Locklear spoke to Mannle and "made some claims about mistreatment" by Leighton and "expressed concerns about Leighton's management style." On February 10, Mannle and Julia Dumaux, argenx's human resources business partner, met with Locklear to discuss her concerns. On February 11, Locklear again met with Dumaux, where she stated that Leighton was "not used to working with a strong woman" and did not understand "some of the projects she [was] working on." On the same day, Mannle sent an e-mail message to Leighton informing him of Locklear's concerns and provided him feedback on improving his relationship with Locklear. On February 13, Mannle met with Locklear and Leighton, and following the meeting, provided feedback to both of them on improving their communication.

On February 25, Locklear wrote an e-mail message to Mannle and requested that she no longer be required to report directly to Leighton. Locklear wrote, "[Leighton], therefore argenx, is making me ill. I go home every day not believing in myself, my work and whether or not I should even stay with argenx. This has taken a toll on me professionally and personally. . . . I am dealing with a personal illness." Later that day, Locklear

wrote an e-mail message to Leighton informing him she would not be attending their scheduled one-on-one meeting the following day, nor would she be attending any future one-on-one meetings with him. In response, Mannle wrote to Locklear, stating "it is not ok to just decline this meeting and more importantly future meetings," and suggesting the three of them meet the following day. Locklear then requested a meeting with Mannle and Woods, indicating she was free to meet the following day. In response, Mannle again suggested Locklear, Leighton, and herself meet. Woods also responded, that he was willing to meet and "committed to help."

On the following day, Locklear did not attend a scheduled meeting with Mannle and Leighton. Locklear also failed to attend the meeting she had requested with Mannle and Woods. Mannle attempted to reach Locklear by calling and sending text messages to her; Locklear did not respond. On or about February 26, Mannle and Woods discussed Locklear's actions and decided to terminate her. On February 27, Mannle wrote Locklear an e-mail message informing her that she was terminated and articulating argenx's reasons for the decision. Locklear did not respond to this message.

Discussion. 1. Standard of review. On appeal, "[w]e review a grant of summary judgment de novo." Miller v. Cotter, 448 Mass. 671, 676 (2007). "We view the evidence in the light

4

most favorable to the nonmoving party."  Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 637 (2012).  "Summary judgment is appropriate where there is no material issue of fact in dispute, and the moving party is entitled to judgment as a matter of law."  Berry v. Commerce Ins. Co., 488 Mass. 633, 636 (2021).  Summary judgment is "a disfavored remedy in the context of discrimination cases based on disparate treatment . . . because the ultimate issue of discriminatory intent is a factual question" (citation omitted).  Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 689 (2016).

2.  McDonnell Douglas framework.  General Laws c. 151B, § 4 (16), bars employment discrimination on the basis of disability or perceived disability:

> "It shall be an unlawful practice . . . [f]or any employer, personally or through an agent, to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of . . . handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation."[2]

To survive summary judgment on a claim brought under this provision, "an employee-plaintiff must produce evidence from which a reasonable jury may infer 'four elements:  membership in a protected class, harm, discriminatory animus, and causation'"

_____

[2] "The statute uses the outdated terms 'handicap' and 'handicapped person.' . . .  We employ the outdated language only when quoting from the statute."  Geezil v. White Cliffs Condominium Four Ass'n, 105 Mass. App. Ct. 103, 103 n.3 (2024).

(citation omitted).  Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 396 (2016).  Employees may produce "indirect or circumstantial evidence [of these elements] using the familiar three-stage, burden-shifting paradigm first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973) (McDonnell Douglas)."  Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 (2005).  First, the plaintiff must make out a "prima facie case of discrimination"; second, "the employer can rebut the presumption created by the prima facie case by articulating a legitimate, nondiscriminatory reason for its [employment] decision"; and third, the employee must provide evidence that the employer's legitimate, nondiscriminatory reason is a pretext (citation omitted).  Bulwer, 473 Mass. at 681.

As did the motion judge, we assume without deciding that Locklear's evidence supports a prima facie case of disability discrimination.  Turning to the second stage, Mannle articulated argenx's reasons for Locklear's termination in her e-mail message to Locklear informing her of the decision to terminate her employ:

> "Within the last twenty-four hours, you have declined to meet with your immediate supervisor and Human Resources, you have not attended a meeting you requested with the Chief Operating officer and you have not communicated with me, even though I have called and texted you.  [A]rgenx has no choice but to take your refusal to speak with your manager, HR, the COO and your refusal to respond to written

6

> communications to mean that you are leaving your role at
> argenx and therefore the company is terminating you,
> effective immediately."

Locklear's abandonment of her obligations constitutes a legitimate, nondiscriminatory reason for argenx's decision to terminate Locklear.  See Sullivan, 444 Mass. at 50 (employer has burden of production, not persuasion, at stage two of McDonnell Douglas framework and therefore "need not prove that the reasons were nondiscriminatory" [citation omitted]).  Thus, argenx met their burden of rebutting Locklear's prima facie case of discrimination.  At the third stage, to survive summary judgment, Locklear bears the burden to show that the evidence is sufficient to allow a reasonable jury to infer argenx's justification is pretext; she does not have to prove that the real reason was discrimination.  See Verdrager, 474 Mass. at 397 ("Massachusetts is a pretext only jurisdiction" [citation omitted]); Bulwer, 473 Mass. at 672 (employee need only present evidence to allow for inference that "reasons given for [employer's] action against him were not the real reasons for that action" [citation omitted]).  To meet this showing, Locklear asserts that a combination of circumstances -- her "hair-trigger" termination, inconsistencies in the statements and actions of Mannle, and Leighton's hostility toward her disability -- exists such that a reasonable juror could find "a suspicion of mendacity."  St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 511 (1993). See Bulwer, supra at 684 (concluding pretext supported by number of factors, including performance evaluations inconsistent with supervisor's criticisms, similarly situated individuals treated differently than plaintiff, stereotype-based comments by supervisors, and failure to follow written procedures).

First, Locklear asserts that argenx's quick decision to terminate her, without giving her notice that she was facing potential termination or asking if she wanted to stay at the company, demonstrates pretext. Argenx's account is doubtful, Locklear argues, because of its "quick trigger" termination and lack of evidence that she abandoned her position as argenx claims. She points to her own deposition testimony as evidence that on the night before her termination, she had no intention of leaving her role. Without more, Locklear fails to meet her burden.

The decision by argenx to terminate Locklear was not made in haste. Prior to deciding to terminate Locklear, argenx made numerous efforts over the course of two days to avoid termination and resolve Locklear's issues with Leighton. On February 25, 2020, after Locklear informed Leighton she would be declining all future meetings with him, Mannle attempted to schedule time to meet with Locklear and Leighton the following day to "see if we can sort through this." Woods, the COO of

8

argenx, also agreed to meet with Locklear at her request and expressed his desire to resolve her issue, stating, "[w]e must work through these differences together," "I am committed to help," and "[l]et's find a way." The next day, on February 26, after Locklear informed Mannle that she would not be attending their scheduled meeting with Leighton, Mannle again tried to come to a resolution by urging Locklear to reconsider her decision. Later that day, Locklear again refused to meet with Mannle and Leighton, failed to attend her requested meeting with Mannle and Woods, and did not respond to calls and text messages from Mannle.

Accordingly, the evidence demonstrates that argenx undertook extensive efforts to resolve Locklear's issue as opposed to terminating her at its first opportunity. It was only when it became clear that its efforts were unavailing, and where Locklear repeatedly ignored meetings and communications, that argenx decided to terminate Locklear. Therefore, pretext cannot be reasonably inferred on this basis. See Tate v. Department of Mental Health, 419 Mass. 356, 363 (1995) (affirming summary judgment for employer where employee was terminated after she ignored warnings and unilaterally addressed her own concerns about employer's organizational structure, and where her evidence "[did] not offer any support her contention that the [employer]'s claim that she was insubordinate is a

9

pretext").  See also Ponte v. Steelcase Inc., 741 F.3d 310, 323 (1st Cir. 2014) (plaintiff's termination was "reasonable business practice" and not pretextual).

Second, Locklear asserts that pretext is further demonstrated by an inconsistency between Mannle's affidavit and Locklear's message to Mannle prior to her termination.  See Bonefont-Igaravidez v. International Shipping Corp., 659 F.3d 120, 124 (1st Cir. 2011) ("pretext can be established by showing . . . 'weaknesses [or] implausibilities' . . . in the employer's offered reasons" [citation omitted]).  In her affidavit, Mannle asserts that, "[i]f Locklear had requested vacation or time off instead of ignoring my communications, I would have allowed her to take time off."  Locklear asserts that this statement is false, and therefore shows pretext, because Locklear informed Mannle that she "need[s] time to consider [her] options" and was terminated shortly thereafter.  These statements are not inconsistent.  Mannle conditioned her statement on Locklear either requesting vacation or time off.  Locklear did neither. Instead, Locklear requested more time to consider her options only after refusing to participate in multiple meetings and ignoring Mannle's subsequent efforts to communicate with her.

Third, Locklear argues that argenx's pretext is demonstrated from Leighton's stereotype-based comments and hostility toward Locklear after she informed him of her

10

disability.  On learning of Locklear's hypersomnia, Leighton
told her that "[she] cannot use [her] disability as an excuse
not to deliver."  Further, he moved up the deadline of a major
project by one month, would not let her work with other people,
and rejected her request to travel to a work conference.
Critically, however, there is no evidence in the record showing
Leighton was involved in argenx's decision to terminate
Locklear.  See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896
F.2d 5, 10 (1st Cir. 1990) ("The biases of one who neither makes
nor influences the challenged personnel decision are not
probative in an employment discrimination case").

Despite Leighton's lack of involvement, Locklear argues in
the alternative that pretext can still be inferred under a
"cat's paw" theory.  See Staub v. Proctor Hosp., 562 U.S. 411,
416 (2011) (employer can be held liable where "nondecisionmaker
exercised such 'singular influence' over the decisionmaker that
the decision to terminate was the product of 'blind reliance'"
[citation omitted]).  We disagree.  The contention that Leighton
influenced Mannle and Woods in their decision to terminate
Locklear is not inferable from this record such that a
reasonable juror could find pretext.  See Bennett v. Saint-
Gobain Corp., 507 F.3d 23, 31 (1st Cir. 2007) ("[T]he plaintiff
speculates that [the decisionmaker] must have been influenced by
his subordinate.  But conjecture cannot take the place of proof

11

in the summary judgment calculus").  Therefore, Locklear fails to demonstrate argenx's stated reasons for her termination were pretext.

Because Locklear failed to produce evidence that allows for a reasonable inference of pretext, argenx has demonstrated the absence of a genuine issue of material fact and we conclude that Locklear is ineligible for relief under G. L. c. 151B, § 4 (16). See Bulwer, 473 Mass. at 680, 683.[3]

Judgment affirmed.

By the Court (Meade, Walsh & Smyth, JJ.[4]),

Clerk

Entered:   February 20, 2025.

---

[3] Locklear's request for appellate costs and fees is denied.

[4] The panelists are listed in order of seniority.

12