# United States Court of Appeals
## For the First Circuit

No. 04-1628

DOMINGO GUZMÁN-RUÍZ, ET AL.,

Plaintiffs, Appellants,

v.

FRANKIE HERNÁNDEZ-COLÓN, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lynch, Circuit Judge.

Arturo Luciano Delgado for appellants.
Luis Villares Sarmiento with whom Sánchez-Betances, Sifre,
Muñoz-Noya & Rivera, P.S.C. was on brief for appellees Hernandez-
Colon and Maldonado-Arrigoitia.
Gary H. Montilla with whom Roberto Márquez-Sánchez was on
brief for Arecibo.

April 27, 2005

**COFFIN**, <u>**Senior Circuit Judge**</u>.  This is an appeal from a summary judgment in favor of Puerto Rico defendant municipality, Arecibo, its mayor and its director of human resources, in a political discharge suit brought by fourteen employees.  Plaintiffs are members of the New Progressive Party (NPP) and the individual defendants are members of the Popular Democratic Party (PDP), which was restored to power after the election of 2000.  The newly elected mayor, Frankie Hernández-Colón, allegedly facing a formidable municipal financial crisis, instigated the termination of many employees, including the plaintiffs.

Plaintiffs' complaint, seeking both injunctive relief and damages, invoked 42 U.S.C. §§ 1983, 1985(3), and other federal causes of action, as well as several Commonwealth provisions. Defendants submitted motions for dismissal and summary judgment supported by statements of municipal officers evidencing not only financial stringency but also implementation of a seniority-based layoff plan devised in contemplation of such an emergency by the prior mayor, an NPP member.  The district court accepted the recommendations of a magistrate judge that summary judgment be granted in favor of the defendants.

After reviewing the evidentiary state of the record in search of material issues of fact and noting a series of procedural defaults, we affirm the rulings of the district court rejecting belated requests for discovery and concluding that the record is

-2-

bereft of any evidence of political animus motivating the discharges. We review the former ruling for abuse of discretion, Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 5 n.2 (1st Cir. 2003), and the latter de novo, Rodriguez v. American Int'l Ins. Co. of Puerto Rico, 402 F.3d 45, 46 (1st Cir. 2005).

We first consider plaintiffs' complaint, which the district court generously characterized as establishing a prima facie case of discrimination. The complaint described plaintiffs as NPP "activists," who served as NPP officers and delegates on election day in 2000 and assisted at rallies and meetings during the campaign. Their political beliefs were alleged, in conclusory terms, to be known by defendants. The fourteen plaintiffs were described as holding the following positions: carpenter (2), janitor (2), driver (2), clerk (3), secretary (2), coordinator, receptionist, and worker.

These allegations may very well describe plaintiffs' jobs as protected from politically motivated dismissal, see, e.g., Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000) (non-policymaking employees are protected from employment decisions based on political affiliation), but job terminations are not unconstitutional solely "because those affiliated with one political party are disproportionately impacted," Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 140 (1st Cir. 2004).

In <u>Acevedo-Diaz</u> v. <u>Aponte</u>, 1 F.3d 62, 69 (1st Cir. 1993), plaintiffs were described as playing prominent roles in "publicly and vocally supporting" a former mayor. Even so, we acknowledged that, "[s]tanding alone, even the circumstantial evidence that some plaintiffs were especially conspicuous targets for discriminatory employment action by defendants would give us serious pause." And, even more recently, in <u>Gonzalez de Blasini</u> v. <u>Family Dep't</u>, 377 F.3d 81, 85-86 (1st Cir. 2004), we affirmed dismissal of a complaint, concluding that even though plaintiff was alleged to be a well known supporter of the NPP, had held a trust position under the previous NPP administration, and defendant had expressed interest in giving her position to a PDP member, this fell short of evidence that defendant knew of plaintiff's affiliation. <u>See</u> <u>also</u> <u>Cosme-Rosado</u> v. <u>Serrano-Rodríguez</u>, 360 F.3d 42, 48 (1st Cir. 2004) (statement of PDP mayor of intent to rid town of NPP activists insufficient to generate genuine issue of material fact); <u>Figueroa-Serrano</u> v. <u>Ramos-Alverio</u>, 221 F.3d 1, 8 (1st Cir. 2000) (similar).

We note our doubt concerning whether plaintiffs had truly set forth a prima facie case to emphasize that it is at best not a strong one. Their task under the burden-shifting analysis applicable to political discrimination cases was to show that their constitutionally protected conduct was a substantial or motivating factor for the adverse employment decision. <u>See</u>, <u>e.g.</u>, <u>Padilla-García</u>, 212 F.3d at 74 (citing <u>Mt. Healthy City Sch. Dist. Bd. of</u>

-4-

Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  Assuming their skimpy showing met this standard, the allegations nonetheless lack any specific information that could bulwark a case for rejecting the genuineness of defendants' response that they "would have taken the same action regardless of the plaintiff's political beliefs," id. (referring to "the Mt. Healthy defense").

This sets the stage for the critical assessment of defendants' proffered justification.  After considerable jousting by the parties over service of process and plans for discovery, the court set the date of May 7, 2003 for a status conference.  A few days before that date, defendants filed a motion for summary judgment with a Statement of Uncontested Material Facts and a motion to dismiss.  Unaccountably, plaintiffs' counsel did not attend the May 7 conference.

This was only the beginning of missed cues.  Plaintiffs responded on May 14 to the motion for summary judgment only by requesting an extension of time beyond the customary ten day limit to June 11 to oppose the motions.  That date passed without any effort to secure a further extension, or to conduct discovery, and without any statement of opposition or opposing statement of material facts, as required by local rules.  Accordingly, on July 14, the court referred the case to the magistrate judge for a report and recommendation, which was to be considered "unopposed."  Under the applicable local rule, facts in a statement of material

facts, if supported by record citations, are deemed admitted unless properly controverted. See D.P.R. R. 56(e).

Three weeks later, on August 8, plaintiffs' counsel filed a motion for reconsideration of the order of reference. We have looked in vain for any support for such a motion except an appeal for sheer mercy. Counsel averred that it was "foreseeable that plaintiffs would need additional time [beyond June 11] to conclude the discovery" but did not explain why preventive anticipatory action was not attempted. Counsel had "coordinated" the tentative deposition of defendant Mayor Hernández but "the undersigner calendar [sic] during the months of June and July of 2003 prevented to do so." Finally, the request: "Plaintiffs deserve an opportunity to conduct further discovery . . . . It was our mistake not to request an additional extension of time to oppose said motion."

Counsel perhaps deserves high marks for candor, but to ask us to find that the district court abused its discretion in refusing to grant this motion is to ask us to use this sad case to make very bad law. Counsel for Arecibo appropriately calls our attention to Justice Harlan's thought in Link v. Wabash Railroad Co.: "[K]eeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." 370 U.S. 626, 634 n.10 (1962) (emphasis in original). Now, if ever, are the teachings of

-6-

such cases as <u>Resolution Trust Corp.</u> v. <u>North Bridge Assocs.</u>, 22 F.3d 1198 (1st Cir. 1994), pertinent. There, we called attention to the safety valve of Fed. R. Civ. P. 56(f), which gives a party with an authentic need the opportunity to buy more time to mount an opposition to summary judgment. <u>Id.</u> at 1203. But we emphasized that invoking the rule required "due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter." <u>Id.</u> In addition to due diligence, we added:

> When, as is often the case, the reason [for a requested extension] relates to incomplete discovery, the party's explanation must take a special form: it should show good cause for the failure to have discovered the facts sooner; it should set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.

<u>Id.</u>

In this case, there was no diligence exercised during the three months of May, June, and July after the motion for summary judgment surfaced. And not only was no good cause shown for failure to have discovered facts sooner, but there was no indication of plausibly hoped for "specified facts" and the feasibility of their timely collection. We therefore have no alternative but to conclude that the district court did not abuse its discretion in refusing to reconsider and grant belated discovery. The magistrate judge therefore properly considered the

-7-

defendants' statement of uncontested material facts as unopposed and, consequently, conceded to be true.

Thus guided, the magistrate judge first noted the sworn statement of Arecibo's Finance Director stating that as of the beginning of Mayor Hernández's administration in 2001 Arecibo had a deficit of twelve million dollars. The statement asserted that because of this extreme situation, and after considering other options such as personnel relocation and reduction of working hours, "the only option available to prevent a collapse of the Municipal economy was to implement layoff of personnel."

The report went on to consider the sworn statement of the municipality's Human Resources Director, referring to letters of dismissal (copies of which were included) informing employees of their impending dismissal, due to the economic crisis, under a dismissal plan based on seniority. Each letter notified the recipient of his right to appeal the dismissal to the Appeals Board of the Personnel System.

Finally, the magistrate judge found no evidence of pretext concealing a discriminatory animus. He then, apparently having given every favorable inference to the allegations in the complaint, recommended that summary judgment issue for defendants.

Plaintiffs made timely objections to this report and recommendation, which are really a replay of the plea for discovery made in the motion for reconsideration. They consist of

two types of allegations. The first is a criticism of both the financial deficit information and the procedures followed in implementing the layoff plan. For example, the assertion is made that defendants' "fact" concerning financial crisis "can be easily questioned" by reviewing municipal financial statements and the "totality of the personnel actions." The demand is for unidentified more "reliable" documents than the affidavits of the Finance Director and the Human Resources Director.

The second set of allegations consists of categorical assertions lacking in any specificity, such as: "certain employees" have been excluded from dismissal and allowed to continue working; new personnel have been hired; "big spending" has taken place; all municipal appointed directors have received substantial pay increases. Plaintiffs assert that, if discovery is allowed, all this will be proven.

What all this comes down to is an outline of areas of hopeful inquiry, something that plaintiffs could have articulated and pursued months earlier. Ultimately, we come to the judgment of the district court when it adopted and approved the Report and Recommendation of the magistrate judge, granting summary judgment for defendants and dismissing all claims. Its key finding was that "[t]he record is void of evidence supporting allegations of political discrimination." While plaintiffs assert that the court placed an improper burden on them to show pretext affirmatively, we

think the state of the record is such that there is no basis for a rational jury to conclude other than that plaintiffs' terminations were the result of "uniformly applied personnel practices[] predicated on legitimate reasons," Sanchez-Lopez, 375 F.3d at 140.

There are two remaining arguments of plaintiffs that claim our attention. On October 31, 2003, they filed an "Informative Motion and Request of Judicial Knowledge," asking the court to take judicial notice "for all legal purposes" of another case involving some two hundred dismissed employees in which plaintiffs had filed a motion for summary judgment before another judge. We note first that plaintiffs did not make this argument to the magistrate, and it is therefore waived. See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988). Moreover, plaintiffs made no attempt to specify what "adjudicable facts" met the requirements of Federal Rule of Evidence 201. Not only do pleadings, parties, issues, and facts differ in different cases, but plaintiffs cannot sidestep their neglect to offer evidence in this case by asking the court to rule on the basis of the record in another case. Finally, the district court's ruling in the other case – finding that the seniority plan used by defendants "could not, as a matter of law, have formed the legal basis for Plaintiffs' dismissal" – did not occur until March 2004, some four months after the Informative Motion was made and on the

same day that the district court in this case signed its order. Refusal to take judicial notice was amply justified.

A final contention is that the district court improperly dismissed plaintiffs' claims based on Act No. 382 of May 11, 1950, 29 P.R. Laws Ann. §§ 136-139. This argument dwindles in the face of the municipality's assertion, not denied by plaintiffs, that the provision was repealed by Act 121 of September 13, 1997, before any events relating to this case took place.

<u>Affirmed.</u>