# United States Court of Appeals
## For the First Circuit

No. 22-1536

WILLIAM RIOS,

Plaintiff, Appellant,

v.

CENTERRA GROUP LLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Rikelman, Hamilton,* and Thompson,
Circuit Judges.

José G. Fagot Díaz, with whom Manuel E. Lopez Fernandez was
on brief, for appellant.

Juan Felipe Santos, with whom Ana B. Rosado-Frontanés was on
brief, for appellee.

June 28, 2024

* Of the Seventh Circuit, sitting by designation.

**HAMILTON, Circuit Judge.** Plaintiff-Appellant William Rios worked for Defendant-Appellee Centerra Group, LLC as a part-time security guard for several United States Coast Guard facilities in Puerto Rico. One morning, a supervisor found Rios asleep at his post, which was grounds for termination under company policy. Centerra fired Rios a few days later. Rios has diabetes. He has sued Centerra alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213 (2009). His central theory is that he had an episode of hypoglycemic shock causing him to fall asleep on the job, and so Centerra should have forgiven him and accommodated his disability. This theory is not what Rios told Centerra at the time, but even giving him the benefit of conflicting evidence, he has not presented any evidence that Centerra knew when it fired him that he suffered a hypoglycemic episode. We affirm the district court's grant of summary judgment to Defendant-Appellee Centerra.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

We recount the below facts "in the light most favorable to [Rios] (the nonmovant), resolving all reasonable inferences in his favor, consistent with record support." Brader v. Biogen Inc., 983 F.3d 39, 44 (1st Cir. 2020); see also, e.g., Rodríguez-Severino v. UTC Aerospace Systems, 52 F.4th 448, 453 (1st Cir. 2022).

- 2 -

## A. CENTERRA AND RIOS'S SECURITY GUARD POSITION

Centerra provides armed security guard services for the United States Coast Guard facilities in Aguadilla, Puerto Rico. Rios was hired by Centerra as an armed security guard on September 14, 2018. He worked on an "as needed" basis and was supervised by Lieutenant William López and Sergeant Gerald Ramos. They both reported to Captain Víctor Caraballo. Rios was assigned to security guard posts at various locations around the Coast Guard facilities, including a shopping center, a school, and an aircraft hangar. He also would occasionally work a "meal break" shift, which involved covering posts temporarily while other security guards took their meal breaks. During these shifts, Rios would drive his car between various posts to relieve other guards. Rios has briefed a long series of incidents during his work for Centerra, but we recount only those at least arguably relevant to the appeal.

## B. FRICTION ON THE JOB

According to Rios, when he was hired he orally told Captain Caraballo of various medical ailments, including his diabetes. There is no evidence in the record that Captain Caraballo ever informed other Centerra officials of these conditions when Rios was hired.

The first incident Rios recounts took place on October 19, 2018. Rios was changing his clothes and checking his blood

sugar levels in the bathroom of a building used by guards for rest. Rios claims that when he came out of the bathroom, he saw Sergeant Ramos with his ear pressed to a wall in the hallway in what Rios assumed was an attempt to spy on him. Sergeant Ramos then chastised Rios, telling him he was not allowed to sleep while on duty. He also admonished Rios for walking around the rest house in what Sergeant Ramos thought was Rios's underwear, although Rios testified in his deposition that it was a pair of shorts.

On October 24, 2018, Rios complained orally to Lieutenant López about the rest house incident, explaining that he believed Sergeant Ramos handled the situation unprofessionally. Lieutenant López told Rios that he should not use the guard rest house bedroom to change his clothes.[1]

Next, in early November, Rios needed to change clothes for his shift and decided to park in one of the four temporary and visitor parking spots next to the guard rest house. Sergeant Ramos told Rios that he could not park in those spots. Rios moved his car to park in a different lot farther from the rest house.

On November 15, 2018, Rios claims that Sergeant Ramos was "spying" on him while he was on duty. Rios was working at the school post when his radio malfunctioned. Sergeant Ramos offered

---

[1] The record is unclear about whether Rios's supervisors thought he had been using the bedroom or the bathroom, but the uncertainty is not material to this appeal.

to bring him a new battery. Earlier, while Rios had been doing rounds on his shift, he testified that another security guard warned him to move his car to a new location, because with that day's rain the car was likely to get stuck where Rios normally parked. While Rios was moving his car, he received a telephone call about a family emergency. While Rios was on the telephone in his car, Sergeant Ramos approached Rios's post from the back entrance. Rios could not see Sergeant Ramos approaching from that direction. He perceived this as an attempt by Sergeant Ramos to "spy" on him. Sergeant Ramos scolded Rios for abandoning his post to sit in his car on the telephone. Rios, however, did not face any formal discipline for this incident.

Sometime in mid to late November 2018, Rios met with Captain Caraballo and Lieutenant López to discuss both the October 19th and November 15th incidents. Rios testified that Captain Caraballo was "very impartial" during the meeting. At the end of the meeting, Lieutenant López warned Rios to get his facts straight if he was going to file a complaint.

In mid December 2018, Rios was again working at the school post. He was eating a snack when Sergeant Ramos approached and scolded him for eating while on duty. In response, Rios told Sergeant Ramos that he was diabetic and needed to eat in order to maintain his blood sugar levels. Rios testified that this was the first time he had told Sergeant Ramos about his diabetes. Notably,

Rios also testified that, despite this admonition, security officers were allowed to consume snacks while at post and that Rios continued to do so himself after this incident without any further scolding. In fact, Lieutenant López often encouraged Rios to get a drink or a snack while on duty.

On December 19, 2018, Rios was working a "meal break" shift. Sergeant Ramos told Rios to park his car in a new employee lot. When Rios started his shift at the shopping center post, he drove in through what was really the exit to the parking area. Sergeant Ramos reprimanded him for doing so. At the end of his shift that day, Rios overheard Sergeant Ramos telling another employee that Rios was "problematic."

The next day, on December 20, 2018, Rios submitted his first written grievance. He described both Sergeant Ramos's reprimand for entering the post through the exit and Ramos's comment that Rios was "problematic." The grievance asked that Sergeant Ramos "learn to confront situations more professionally [and] respectfully."

Also on December 20th, Rios was again working a "meal break" shift. Rios testified that Ramos instructed him to work more quickly to cover six different posts for twenty-minute increments each. As Rios moved between posts in his car, he saw Sergeant Ramos following behind him in a vehicle as well. Rios again interpreted this as Sergeant Ramos "spying" on him.

At the second post of Rios's shift, Sergeant Ramos approached and offered him a doughnut. Rios interpreted Sergeant Ramos's offer as mocking because he was grinning. Rios believed it was disrespectful for Sergeant Ramos to offer him unhealthy foods that he is not able to eat. Rios told Sergeant Ramos that offering him a doughnut was like offering him poison, and Rios then walked away.

On December 22, 2018, Rios submitted a second written grievance discussing the December 20th "spying" and doughnut incidents. Rios also repeated his complaint about overhearing Sergeant Ramos telling another employee that Rios was a "problematic person." He also accused Sergeant Ramos of failing to answer radio calls for assistance in a timely manner.

Sometime in late December 2018 or early January 2019, Rios met with Captain Caraballo and a Centerra human resources officer. The human resources officer explained that Centerra had concluded its investigation into all the incidents in Rios's two written grievances. Rios brought up his medical conditions, including his diabetes. At that point, the human resources officer asked Captain Caraballo to give Rios a form for his doctor to determine if Rios qualified for reasonable accommodations. Captain Caraballo did not give the form directly to Rios but instead left it at one of the guard posts to be picked up. Rios did not follow up about the form. During the meeting, Rios never

requested a specific accommodation.  He later testified that he wanted to be able to eat at post without being reprimanded.

In early February 2019, Sergeant Ramos organized an off-duty shooting practice that Rios attended.  Rios testified that during this outing, Sergeant Ramos ignored him and did not provide him with any tips or pointers.  Instead, a different officer provided Rios with instruction during the practice.

### C.    FINAL SHIFT AND TERMINATION

On February 23, 2019, Rios was working a shift at the airplane-hangar post.  Lieutenant López stopped by to see if Rios needed a break.  Rios responded that everything was fine.  About an hour later, Lieutenant López returned to the post to give Rios his meal break.  He saw that Rios appeared to have dozed off while on duty.  Rios woke up after a few moments.  He first told Lieutenant López that he had been writing and reading.  Lieutenant López began to reprimand Rios for falling asleep at post, a breach of company policy.  Rios responded that he had lost better jobs before.  Rios testified that he eventually told Lieutenant López that he "dozed off into an unconscious state."  Rios was relieved of duty and sent home.  That same day, Lieutenant López wrote and submitted an incident report recommending that Rios be fired for falling asleep on duty.  Rios was not assigned any additional shifts while the incident was investigated.

Centerra's internal investigation concluded that Rios had fallen asleep at post. Under company policy, that was a sufficient reason to fire him. Centerra formally terminated Rios's employment on March 2, 2019.

## D.  LAWSUIT AND APPEAL

Rios and his wife filed this lawsuit against Centerra alleging that Centerra discriminated against Rios because of his disability, failed to provide him with a reasonable accommodation, subjected him to a hostile work environment in violation of the ADA and Puerto Rico law, and unlawfully retaliated against Rios in violation of the ADA and Puerto Rico Law. The district court granted summary judgment to Centerra on all claims. On appeal, Rios is the only appellant. He challenges the following decisions of the district court:

(1)  Grant of summary judgment on ADA discrimination claim;

(2)  Grant of summary judgment on ADA claim for failure to provide a reasonable accommodation;

(3)  Grant of summary judgment on ADA claim for hostile work environment;

(4)  Grant of summary judgment on ADA claim for retaliation; and

(5)  Denial of Rios's Federal Rule of Civil Procedure 56(d) motion seeking additional discovery to respond to the motion for summary judgment.

We discuss these challenges in turn.[2]

## II.  STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment.  Brader v. Biogen Inc., 983 F.3d 39, 53 (1st Cir. 2020). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If Rios "can point to record evidence allowing a reasonable jury to return a verdict in his favor, then we would say there is a genuine dispute of material fact and the district court erroneously granted summary judgment." Snell v. Neville, 998 F.3d 474, 486 (1st Cir. 2021).  However, "[t]he nonmovant cannot rely on 'conclusory allegations, improbable inferences, and unsupported speculation.'"  Brader, 983 F.3d at 53 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## III. ADA DISCRIMINATION CLAIM

"The ADA prohibits an employer from discriminating against an otherwise qualified individual based on a real or perceived disability."  Murray v. Warren Pumps, LLC, 821 F.3d 77, 83 (1st Cir. 2016) (citing 42 U.S.C. §§ 12102 & 12112 and 29 C.F.R. § 1630.2).  "The plaintiff bears the burden of presenting evidence

---

[2] On appeal, Rios does not raise any claims arising under Puerto Rico law.  We consider only the federal claims he has briefed.

to establish each element under the particular theory of disability discrimination alleged."  Id.

Rios has not offered direct evidence of discriminatory animus.  He relies instead on the familiar McDonnell Douglas burden-shifting framework to analyze his claim.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-07 (1973).  At the first stage of this framework, the plaintiff bears the burden of showing a "prima facie case of discrimination."  Miceli v. JetBlue Airways Corp., 914 F.3d 73, 81 (1st Cir. 2019).  To establish a prima facie case, Rios must offer evidence that he had a disability but that he was "nonetheless qualified to perform the essential functions of the job, with or without reasonable accommodation; and that, despite the foregoing," Centerra dismissed him or otherwise adversely affected him, in whole or in part because of his disability.  See id.; see also López-López v. Robinson School, 958 F.3d 96, 104 (1st Cir. 2020).

If Rios establishes a prima facie case of discrimination, the burden then shifts to Centerra to offer a legitimate, non-discriminatory reason for the termination or other adverse action.  See Brader v. Biogen Inc., 983 F.3d 39, 55 (1st Cir. 2020).  "The employer's burden is not a burden of persuasion; the employer need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go

for a nondiscriminatory motive." Dávila v. Corporación De Puerto Rico Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007).

If the employer provides such a reason, we have explained, "the sole remaining issue is discrimination vel non." Brader, 983 F.3d at 55 (quoting Ray v. Ropes & Gray LLP, 799 F.3d 99, 113 (1st Cir. 2015)). To avoid an entry of summary judgment against him, Rios must offer evidence that would allow a reasonable jury to find "that the employer's proffered reason is pretextual and that the actual reason for the adverse employment action is discriminatory." Johnson v. Univ. of Puerto Rico, 714 F.3d 48, 54 (1st Cir. 2013).

Here, the parties at least assume for purposes of summary judgment and appeal that Rios had a disability within the meaning of the ADA. They dispute whether he was a qualified individual with a disability, including whether he could perform the essential functions of a security guard with or without reasonable accommodations. For purposes of this appeal, however, we assume without deciding that Rios was a qualified individual and has satisfied that aspect of his prima facie discrimination claim.[3]

_____

[3] As a matter of common sense, it seems to us, staying awake on the job looks like an essential function of working as a security guard. At the same time, one might also argue that an employer could provide reasonable accommodations that would prevent a diabetic employee from experiencing hypoglycemic shock while on duty, which is what Rios testified caused him to fall

Rios argues that several incidents in addition to his termination amounted to adverse employment actions. As we explain next, only the termination amounted to an adverse action.

## A. ADVERSE ACTION

"An 'adverse employment action' is one that 'affect[s] employment or alter[s] the conditions of the workplace.'" Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (quoting Burlington Northern & Sante Fe Railway Co. v. White, 548 U.S. 53, 61–62 (2006)). For employment discrimination claims, a plaintiff need not show he suffered "significant" harm for an incident to represent an adverse employment action. See Muldrow v. City of St. Louis, 601 U.S. ___, ___, 144 S. Ct. 967, 974 (2024). However, Rios must at least offer evidence of a change in the terms or conditions of his employment that left him worse off. Id. at 974, 976–77.[4]

---

asleep at his post. Because the district court assumed that Rios was a qualified individual under the ADA for purposes of deciding the motion for summary judgment, Sheridan v. Centerra Group, LLC, No. 19-2036, 2022 WL 1751187, at *5 (D.P.R. May 31, 2022), we too bypass this issue.

[4] Muldrow was a Title VII sex-discrimination case challenging a job transfer, but its reasoning extends to an ADA discrimination claim challenging discrimination affecting the "terms or conditions" of employment. The relevant statutory language in Title VII and the ADA is virtually identical. Compare 42 U.S.C. § 2000e-2(a)(1) (Title VII) ("It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or

- 13 -

Rios argues that he experienced adverse employment actions when supervisors told him not to eat at his post, not to park his car in the spots near the guard rest house, and not to use the guard rest house bedroom to change his clothes. None of these incidents resulted in any formal discipline. In fact, Rios testified his supervisors continued to allow him to eat at his post despite the one admonition for that activity. App. 510, 634-35. A mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment. See Muldrow, 601 U.S. at __, 144 S. Ct. at 974 (explaining that an employment discrimination plaintiff "must show some harm respecting an identifiable term or condition of employment").

Rios also asserts that a supervisor's failure to provide him with any pointers at an off-duty practice session at a shooting range was an adverse employment action. We cannot agree. Even

privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."), with 42 U.S.C. § 12112(a) (ADA) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."). Additionally, in evaluating ADA discrimination cases, this Court previously has applied the same legal standards used to analyze discrimination under Title VII. See, e.g., Cherkaoui v. City of Quincy, 877 F.3d 14, 25-26 (1st Cir. 2017).

under Rios's version of the facts, another officer offered him some pointers. This incident is not the stuff of federal employment discrimination law. In Muldrow, the Court pointed to transfers to a new worksite in a wind tunnel, requiring overnight work, and a reduction in supervising duties as harms that would constitute an adverse action. 601 U.S. at ___, 144 S. Ct. at 975. By contrast, even though Rios identifies this "pointers" incident as disparate treatment on account of his disability, what he describes is not "some harm" that left him "worse off." Id. at 974.

Termination, however, is of course the quintessential adverse employment action. See, e.g., Brader, 983 F.3d at 54-55. Rios thus established a prima facie discrimination claim for his termination for reportedly sleeping on the job.

### B. LEGITIMATE, NON-DISCRIMINATORY REASON

Centerra asserts that it fired Rios for falling asleep on the job. Its company policy says that sleeping on duty is grounds for termination. App. 678. The contemporaneous incident report of Lieutenant López recommended firing Rios for falling asleep on duty. App. 667-69. Centerra thus met its burden of articulating a legitimate, non-discriminatory reason for termination. See Brader, 983 F.3d at 55.

- 15 -

## C.   PRETEXT

"In assessing pretext, our focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." Brader, 983 F.3d at 56 (alterations omitted) (quoting Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 452 (1st Cir. 2009)).  It is "not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." Id. (alteration omitted) (quoting Vélez, 585 F.3d at 452).  Further, "a false justification is no sham at all unless the employer knows it to be false." Joseph v. Lincare, Inc., 989 F.3d 147, 160 (1st Cir. 2021).

Here, Rios has failed to create a dispute of material fact regarding whether Centerra knew its stated, non-discriminatory reason for Rios's termination was false.  Rios testified in his deposition, long after the event, that he was rendered unconscious at his post due to a sudden onset of hypoglycemic shock.  App. 553, 557.  He has offered no medical evidence to support this theory, but even if we accept it as true, at the time of the investigation into the sleeping incident and his firing, the record shows that Rios told Centerra officials that he simply fell asleep or alternatively that he dozed off

because he felt dizzy and sick.  App. 668, 671-72.  This is not enough to create a dispute of material fact about pretext.

Rios also attempts to create a dispute of material fact regarding pretext by asserting that he was treated differently than similarly situated employees who did not have disabilities. See Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003) (explaining that a plaintiff can demonstrate an employer's reason is pretextual by showing plaintiff was treated differently than similarly situated employees).  To do so, he must show "that others similarly situated to him in all relevant respects were treated differently by the employer."  Id. (quoting Conward v. Cambridge School Comm., 171 F.3d 12, 20 (1st Cir. 1999)).  Plaintiffs can demonstrate pretext through evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Brader, 983 F.3d at 56 (quoting Adamson v. Walgreens Co., 750 F.3d 73, 79 (1st Cir. 2014)).  In opposing a motion for summary judgment, however, a plaintiff must offer admissible evidence.  See Fed. R. Civ. P. 56(c).  The comparators Rios relies upon do not give rise to a genuine issue of material fact.  Either they were not

similarly situated or his evidence amounts to only office gossip outside the personal knowledge of a testifying witness.

First, Rios says that an Officer Torres suffered an epileptic attack while on duty but was not fired. This supposedly occurred before Rios began working at Centerra. Rios says he was told about the incident by two other Centerra employees. This incident is not in Rios's personal knowledge. His account of an event he heard about secondhand is inadmissible and does not raise a genuine dispute of material fact. See Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Fed. R. Civ. P. 56(c)(4) ("declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated").

Finally, Rios asserts that an Officer González fell asleep on duty twice but was only suspended, not fired. Again, Rios explains that he was told about these incidents by another Centerra employee, Orlando Valentín. Rios was not certain whether even Valentín had personal knowledge of the alleged González incidents. An official incident report regarding Officer González was produced, but this document only shows that González was reprimanded for "[b]eing inattentive to duty but not asleep."

- 18 -

(Emphasis added.) Rios has not offered any admissible evidence showing that González was a valid comparator for his own falling asleep on duty.

Rios has failed to provide any "'minimally sufficient evidence' of pretext and a discriminatory animus" and thus has failed to create a genuine dispute of material fact on the issue of pretext. See Brader, 983 F.3d at 58 (quoting Pearson v. Massachusetts Bay Transp. Auth., 723 F.3d 36, 40 (1st Cir. 2013)). Because Rios failed to present evidence from which a reasonable jury could find that Centerra held a discriminatory animus toward him based on his disability, he has failed to satisfy his burden of production on pretext. See id. We affirm the district court's grant of summary judgment to Centerra on Rios's discrimination claim.

## IV. ADA REASONABLE ACCOMMODATION CLAIM

Rios also claims that Centerra violated the ADA by failing to provide a reasonable accommodation for his disability. The ADA defines unlawful discrimination to include an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on [its] operation of the business." Ortiz-Martínez v. Fresenius Health Partners, PR, LLC, 853 F.3d 599, 604 (1st Cir.

2017) (alterations in original) (quoting 42 U.S.C. § 12112(b)(5)(A)).

To avoid summary judgment on this claim, Rios needed to offer evidence that (1) he requested an accommodation or the employer otherwise knew one was needed, (2) the accommodation would have allowed him to perform the essential functions of his job, and (3) the accommodation was facially reasonable. See Echevarría v. AstraZeneca Pharmaceutical LP, 856 F.3d 119, 127 (1st Cir. 2017) ("The plaintiff bears the burden of showing the existence of a reasonable accommodation."); Ortiz-Martínez, 853 F.3d at 605 ("The burden is on [plaintiff] to demonstrate in the first instance what specific accommodations []he needed and how those accommodations were connected to h[is] ability to work."); Murray v. Warren Pumps, LLC, 821 F.3d 77, 84 (1st Cir. 2016) ("An employer is obligated to provide a reasonable accommodation (as long as it is not unduly burdensome) where a protected employee has requested an accommodation or the employer otherwise knew that one was needed."). "The employee's request must be 'sufficiently direct and specific,' giving notice that []he needs a 'special accommodation.'" Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001) (quoting Wynne v. Tufts Univ. School of Medicine, 976 F.2d 791, 795 (1st Cir. 1992)).

Rios testified that he never requested a specific accommodation from Centerra. His best evidence is that he referred

- 20 -

to his diabetes in a meeting with an official from Centerra's human resources and Captain Caraballo. Centerra said it would furnish Rios with a form for his doctor so that the company could determine what accommodations, if any, were needed. At that point, Captain Caraballo did not provide the form directly to Rios, but instead left it at one of the guard posts for him to pick it up. Rios never followed up with Caraballo regarding the forms, nor did he ever provide Centerra with medical documentation regarding his disability.

For the sake of argument, we will assume that Rios's meeting with the human resources officer and Captain Caraballo triggered Centerra's duty to engage in an interactive process. See Ortiz-Martínez, 853 F.3d at 605 (explaining that an employee's request for an accommodation can sometimes impose a duty on the employer to engage in an interactive process); see also 29 C.F.R. § 1630.2(o)(3) (noting need for interactive process). Both an employer and employee have a duty to participate in the interactive process. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 23-24 (1st Cir. 2004).

Here, the interactive process between Rios and Centerra seems to have broken down almost immediately. "Where a breakdown in the process has been identified, 'courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party

determine what specific accommodations are necessary.'" Enica v. Principi, 544 F.3d 328, 339 (1st Cir. 2008) (quoting Beck v. Univ. of Wisconsin Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996)). In particular, a party who fails to communicate may be acting in bad faith, and if the "missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process." Beck, 75 F.3d at 1136.

Information about Rios's medical conditions is both the type of information available only to Rios and necessary for Centerra to determine what reasonable accommodations he might have needed. See Ortiz-Martínez, 853 F.3d at 605-06 (explaining that requesting specific information regarding medical conditions is both reasonable and critical to determining accommodations needed). The undisputed evidence shows that, rather than failing to engage in an interactive process, Centerra itself initiated that process. The process then stalled as management waited for relevant medical information that could come only from Rios. As soon as it was brought to Centerra's attention that Rios had not ever received the relevant form, Captain Caraballo clarified its location less than twenty-four hours later. Rios took no further action after that to provide the medical information necessary to determine a reasonable accommodation.

With undisputed evidence showing that Rios never requested a specific accommodation and that Centerra did not fail to participate in an interactive process in good faith, we affirm the grant of summary judgment to Centerra on Rios's reasonable accommodation claim.

## V. ADA HOSTILE WORK ENVIRONMENT CLAIM

Rios also contends he was subject to a hostile work environment as a result of his disability. To prove a hostile environment based on disability, a plaintiff must offer evidence of harassment "sufficiently severe or pervasive so as to alter the conditions of [plaintiff's] employment and create an abusive work environment." Murray v. Warren Pumps, LLC, 821 F.3d 77, 86 (1st Cir. 2016) (quoting Ponte v. Steelcase Inc., 741 F.3d 310, 320 (1st Cir. 2014)). "The challenged conduct must be both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the plaintiff in fact did perceive it to be so." Brader v. Biogen Inc., 983 F.3d 39, 59 (1st Cir. 2020) (quoting Maldonado-Cátala v. Municipality of Naranjito, 876 F.3d 1, 10 (1st Cir. 2017)). We evaluate a hostile work environment claim considering the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interfere[d] with an employee's work performance." Id. (quoting Maldonado-Cátala, 876 F.3d at 10) (alteration in original).

While the record makes clear that Rios subjectively found much of the complained-of conduct hostile, our precedents make clear that it was not objectively so. Most critically, Rios has failed to connect much of the complained-of conduct to any discriminatory animus. "[G]enerally disagreeable behavior and discriminatory animus are two different things." Id. at 64 (quoting Ahern v. Shinseki, 629 F.3d 49, 59 (1st Cir. 2010)). We must "distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005).

In this appeal, Rios points to five incidents, all involving Sergeant Ramos, that he alleges constitute harassment rising to the level of a hostile work environment. These include: (1) in October 2018, Rios was changing in the guard rest house when, he alleges, Sergeant Ramos "spied" on him by listening with his ear pressed to the wall and then falsely accused Rios of sleeping on duty and walking around the rest house in his underwear; (2) in early November 2018, Sergeant Ramos admonished Rios for parking his car in the temporary and visitor parking near the guard house and ordered Rios to move his car to a different location farther away; (3) in early December 2018, Sergeant Ramos admonished Rios for eating a snack while on duty; (4) on December

19, 2018, Rios overheard Sergeant Ramos telling another officer that Rios was the "problematic one;" and (5) on December 20, 2018, Sergeant Ramos offered Rios a doughnut in what Rios perceived as a "mocking" manner.

In a hostile work environment claim under the ADA, any alleged harassment must stem from an impermissible motivation, particularly plaintiff's disability. See Brader, 983 F.3d at 59-60. Rios explained that he first told Sergeant Ramos of his diabetes in early December 2018, after Sergeant Ramos scolded him for eating a snack while on duty. App. 481-82. The rest house "spying" incident, the parking incident, and the eating admonition all occurred before Sergeant Ramos knew of Rios's disability. These incidents do not factor into our hostile work environment analysis because they simply could not have been motivated by an impermissible motive. They occurred before Sergeant Ramos was aware of Rios's diabetes.

This leaves the incident where Rios overheard Sergeant Ramos call him "problematic," as well as Sergeant Ramos's "mocking" offer of doughnuts. Neither incident, standing alone or together, would permit a jury to find severe or pervasive harassment that altered the conditions of Rios's employment. See Brader, 983 F.3d at 62 (explaining that generic complaints about a supervisor's criticisms or effectiveness do not constitute "severe or pervasive" harassment); see also Colón-Fontánez v. Municipality of

San Juan, 660 F.3d 17, 44 (1st Cir. 2011) ("'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment' to establish an objectively hostile or abusive work environment." (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)); cf. Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 91–94 (1st Cir. 2018) (reversing summary judgment on hostile work environment claim where plaintiff was taunted about her age nearly every single day for over two years: she was told that she was "useless," was chastised for supposedly lacking skills necessary to do job because her age rendered her "slow," was told that given her age, she should seek Social Security benefits, with the suggestion that because she was perceived as being too old for the job, she should resign before being forcibly discharged).  We affirm the district court's grant of summary judgment to Centerra on Rios's hostile work environment claim.

## VI.  ADA RETALIATION CLAIM

The ADA prohibits "discriminat[ion] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42

U.S.C. § 12203(a). Rios asserts that Centerra unlawfully retaliated against him in violation of the ADA.

To survive summary judgment on his retaliation claim, Rios "must establish a genuine issue of material fact as to whether he . . . was retaliated-against within the meaning of the ADA." Carreras v. Sajo, García & Partners, 596 F.3d 25, 32 (1st Cir. 2010). We adapt the burden-shifting framework discussed above to analyze Rios's retaliation claim. See Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997) (explaining "guidance on the proper analysis of [plaintiff's] ADA retaliation claim is found in Title VII cases"). Rios may still assert a claim for retaliation despite his failed discrimination claim. See Echevarría v. AstraZeneca Pharmaceutical LP, 856 F.3d 119, 133 (1st Cir. 2017).

To establish a prima facie retaliation claim, Rios must show that (1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. See Kelley v. Correctional Medical Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013) (listing elements of prima facie ADA retaliation claim); Palmquist v. Shinseki, 689 F.3d 66, 77 (1st Cir. 2012) (explaining that ADA contains a but-for causation standard for retaliation and extending same standard to related provisions of Rehabilitation Act of 1973).

Here, we are skeptical whether Rios has offered evidence from which a reasonable jury could find that he meets the elements listed above. Several of the activities he points to do not qualify as protected activity. For the two activities that were arguably protected — a complaint letter in which Rios mentions his diabetes and the meeting with Captain Caraballo and a human resources officer — he has offered virtually no evidence that would allow a reasonable jury to find he would not have experienced an adverse employment action but for that protected conduct. Still, we will assume that Rios has made out a prima facie retaliation claim because the undisputed evidence shows that he has failed to carry his burden at the final stage of the burden-shifting framework. Rios has provided no evidence of discriminatory animus that would allow a reasonable jury to infer that Centerra's reasons for his firing were pretextual. We now explain this conclusion in further detail.

## A. PROTECTED ACTIVITY

Rios points to five instances of what he says were protected activity. First, on October 24, 2018, he complained orally to Lieutenant López about the incident in which Sergeant Ramos supposedly spied on Rios in the rest house. In response, Lieutenant López told Rios he could no longer use the rest house

bedroom to change clothes. App. 487-88.[5] During his deposition testimony, Rios explained that he specifically complained that Sergeant Ramos: (1) spied on him, (2) did not handle the situation professionally, and (3) accused Rios of sleeping on duty and walking around the rest house in his underwear without any evidence. App. 484, 486-88. None of these minor complaints related to Rios's disability or any investigation under the ADA, so none amounted to a protected activity.

Second, sometime in mid to late November 2018, Rios met with Captain Caraballo and Lieutenant López to discuss again the October 19th rest house incident. He also discussed an additional incident on November 15, 2018, in which Rios claims Sergeant Ramos spied on him while Rios was on duty near the school. As discussed above, the October 19th incident was unrelated to Rios's diabetes. So was the November 15th incident. While on duty, Rios had taken a moment to move his car and received a call about a family emergency. While Rios was in his car on the telephone, Sergeant

---

[5] In his briefs, Rios repeatedly asserts that, as a result of this incident, Lieutenant López forbade him from checking his blood glucose levels in the rest house bathroom. There is no factual support in the record for this assertion. During Rios's deposition, he was asked: "What did [Lieutenant López] tell you specifically?" Rios answered: "That I can't use the bedroom upstairs to get changed." However, there is nothing in Rios's testimony about not using the bathroom or bedroom to check blood glucose levels. Attorney argument or embellishment cannot substitute for missing evidence.

Ramos was on supervisory rounds and approached Rios from the back entrance to the school post. Rios framed this as Sergeant Ramos "spying" on him.[6] Sergeant Ramos scolded Rios for abandoning his post to sit in his car and talk on the phone, but Rios did not face any formal discipline. Neither minor incident, nor Rios's November meeting with Captain Caraballo and Lieutenant López, involved Rios discussing his diabetes or any ADA-related topics, so these were not protected activities.

Third, on December 20, 2018, Rios submitted a written grievance discussing an incident that occurred while Rios was on duty the prior day. Before his shift, Rios was directed by Sergeant Ramos to park in the new employee parking lot. Rios then entered the area where he would be working through the exit because he had previously seen other employees doing the same thing. Sergeant Ramos confronted and scolded Rios about this. Rios also explained in the letter that he overheard Sergeant Ramos calling Rios "problematic" to another employee. The letter requested that "S[ergeant] Ramos should learn to confront situations more

---

[6] Throughout this opinion we have noted Rios's complaints about his supervisors "spying" on him. We must note the logical and etymological connections between supervision and oversight. Supervisors supervise by overseeing, that is, "looking over" subordinates. While "spying" comes with connotations of impropriety, the routine actions of Rios's supervisors in observing his behavior at work are not "spying" in the pejorative sense Rios has invoked.

professionally and respectfully."  Because Rios's letter did not concern his diabetes or any other ADA-related topic, it was not protected conduct under the ADA.

Fourth, on December 22, 2018, Rios submitted a second written grievance.  He repeated his complaint about overhearing Sergeant Ramos telling another employee that he was a "problematic person."  Rios also explained that during his shift on December 20th, Sergeant Ramos followed him around very closely, admonished him for running late, and told him to work more quickly.  Rios also accused Sergeant Ramos of failing to answer radio calls for assistance in a timely manner.  Finally, the letter explains that on December 20th, Sergeant Ramos offered Rios a doughnut to eat.  During the letter's discussion of the doughnut incident, Rios mentioned his diabetes.  Because the letter mentioned Rios's diabetes and varying blood sugar levels, that aspect of the grievance might be deemed a protected activity.

Finally, Rios points to the meeting he held with Captain Caraballo and a Centerra human resources official in which they discussed his diabetes.  This meeting was protected conduct, given that the discussion largely focused on Rios's diabetes and the information Centerra would need to determine if Rios qualified for any reasonable accommodations under the ADA.

## B. ADVERSE EMPLOYMENT ACTION AND CAUSATION

Based on the timing of the two incidents of protected activity above, Rios has raised two alleged adverse employment actions. The first is the letter of reprimand received on December 27, 2018, and the second was his February 2019 termination. The first incident was not an adverse employment action because Rios suffered no employment consequences as a result of the reprimand letter. See Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 73 (1st Cir. 2011) (explaining that reprimands that carry no "tangible consequences," even if undeserved, are not adverse employment actions for purposes of retaliation claims).

Rios's termination was of course an adverse employment action. But to establish a prima facie retaliation claim, Rios must present evidence that would allow a reasonable jury to infer that his termination was caused by his protected activity—either the December 22nd complaint letter or his meeting with Captain Caraballo and human resources.

Rios has provided very little evidence that any protected activity caused or even contributed to his termination. First, he asserts without any citation to the record that "the relevant decision makers . . . uttered disability based comments against him." Rios himself explained, however, that when he met with Captain Caraballo and the human resources officer, they readily started a process to determine if Rios needed any

reasonable accommodations. Further, Rios did not testify that either individual made any comments in that meeting that could lead a reasonable jury to infer that his supervisors at Centerra had any discriminatory animus towards him due to his disability.[7]

The only argument with record support that Rios makes to show causation is the temporal proximity between the meeting with Captain Caraballo and human resources and his eventual termination. It is true that less than two months passed between the meeting that constituted protected activity and Rios's termination. However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." Cherkaoui v. City of Quincy, 877 F.3d 14, 28-29 (1st Cir. 2017) (quoting Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam)). Previously, this Court has noted that other circuits had found three months too long a gap to permit by itself an inference of causation, see Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6,

---

[7] Rios also mentions in passing that comparator evidence can be used to support an inference of causation for a prima facie retaliation claim. But as explained, Rios has not provided any admissible evidence of similarly situated employees who were treated more favorably than he was. See supra at 17-19.

25 (1st Cir. 2004), but we found one month was sufficiently close to establish a prima facie case, id. at 26.

Given the dearth of causation evidence other than an almost two-month temporal gap, it may be a close question whether Rios has made out a prima facie claim of retaliation. See Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003) (explaining that "chronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation'" (alteration in original) (quoting Soileau, 105 F.3d at 16)). But here, even if we assume he has done so, his retaliation claim fails at the pretext stage of the analysis.

## C. PRETEXT

As discussed above, Centerra has provided a legitimate, non-discriminatory reason for Rios's termination—falling asleep on duty in violation of company policy. Rios argues this reason is pretextual in the context of his retaliation claim. The same evidence that Rios used to establish causation for his prima facie retaliation claim is what Rios argues would allow a reasonable jury to infer pretext.

As already recounted, undisputed facts in the record show that: (1) Rios was fired for falling asleep while at work; and (2) neither Captain Caraballo nor the human resources officer demonstrated any discriminatory animus towards Rios during the meeting in which they discussed his medical conditions. Indeed,

the evidence overwhelmingly supports that Centerra fired Rios for falling asleep on the job. "The ADA is not a license for insubordination at the workplace." Reed v. LePage Bakeries, Inc., 244 F.3d 254, 262 (1st Cir. 2001). The mere fact that Rios was terminated less than two months after engaging in protected conduct would not, in the light of all the other evidence in the record to the contrary, allow a reasonable jury to infer that Centerra's reason for firing Rios was pretextual. See Echevarría, 856 F.3d at 138 (affirming summary judgment on retaliation claim; while one-day time gap between protected conduct and adverse employment action was temporally close, that alone was insufficient to establish pretext and overcome defendant's non-retaliatory explanation); Alvarado v. Donahoe, 687 F.3d 453, 463–64 (1st Cir. 2012) (affirming grant of summary judgment for defendant on retaliation claim; one week between protected conduct and suspension was sufficiently close to warrant prima facie inference of a causal connection between two events, but insufficient to establish pretext and overcome defendant's asserted non-retaliatory reason for the suspension); Carreras, 596 F.3d at 38 (summary judgment for defendant on ADA retaliation claim was proper when only evidence of pretext in record was temporal proximity of four days between plaintiff's protected activity and adverse employment action). We affirm the district court's grant of summary judgment to Centerra on Rios's retaliation claim.

## VII. DENIAL OF RULE 56(D) MOTION

We review for an abuse of discretion a district court's denial of a Federal Rule of Civil Procedure 56(d) motion for additional time to obtain evidence to oppose summary judgment. Emigrant Residential LLC v. Pinti, 37 F.4th 717, 724 (1st Cir. 2022). To succeed, a party's Rule 56(d) motion typically must: "1) be timely; 2) be authoritative; 3) show good cause for failure to discover the relevant facts earlier; 4) establish a plausible basis for believing that the specified facts probably exist, and 5) indicate how those facts will influence the outcome of summary judgment." Pina v. Children's Place, 740 F.3d 785, 794 (1st Cir. 2014).[8]

"As we have often observed, however, Rule 56(d) 'is designed to minister to the vigilant, not to those who slumber upon perceptible rights.'" Id. at 794 (quoting Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 45 (1st Cir. 1998)). To that end, a party must show an exercise of due diligence in pursuing discovery before a motion for summary judgment is filed, as well as moving for an extension of time for additional discovery after the summary judgment motion is filed.

---

[8] Prior to 2010, Rule 56(d) was denominated Rule 56(f). See Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment; Emigrant Residential LLC, 37 F.4th at 724.

See <u>Guzmán-Ruíz</u> v. <u>Hernández-Colón</u>, 406 F.3d 31, 35 (1st Cir. 2005).

Rios's Rule 56(d) motion was filed (1) after he had twice assured the district court, through joint motions, that there were no pending discovery disputes between the parties, Dkt. 19, 21, and (2) after requesting an extension of time to oppose the motion for summary judgment without mentioning any outstanding discovery requests, Dkt. 25. In fact, Rios filed his Rule 56(d) motion on the same day his Opposition to the Motion for Summary Judgment was due after the court granted his initial extension request. Dkt. 27.

Further, the additional discovery Rios said he was seeking through his Rule 56(d) motion was comparator evidence from Centerra. He was hoping to discover similarly situated employees who were treated more favorably than he was. Dkt. 27. The possible need for such evidence could not have come as a surprise. Any attorney representing a plaintiff in an employment discrimination case should understand even before filing a complaint that comparator evidence may be critical. The district court did not abuse its discretion by treating this belated request as an insufficient reason for further delay and prolonged discovery. Rios has failed to show good cause for his failure to discover these facts earlier.

Centerra supplemented its interrogatory responses and document production on August 14, 2020, about four months before the discovery deadline in the case.  See Dkt. 31-1.  That left Rios with plenty of time to move to compel under Federal Rule of Civil Procedure 37 if he did not think Centerra's responses were sufficient, particularly with regard to his requests related to comparator evidence.  Cf. Rivera-Almodóvar v. Instituto Socioeconómico Comunitario, Inc., 730 F.3d 23, 27 (1st Cir. 2013) 37 ("The plaintiff's situation did not call for heroic measures but, rather, for a routine motion to compel.  A motion to compel is a standard tool, well within the capability of any reasonably diligent litigant." (internal citations omitted) (emphasis added)).  "[T]he plaintiff slumbered through discovery and never seasonably availed [him]self of the discovery-enforcement tools that were at h[is] disposal.  This sort of circumstance has considerable force in our review of the denial of a Rule 56(d) motion."  Id. at 29.  The district court did not abuse its discretion in denying Rios's Rule 56(d) motion given his failure to show good cause or due diligence in pursuing discovery for information regarding similarly situated employees.

## VIII.    Conclusion

The judgment of the district court is AFFIRMED.